UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                                                      :

JACK BIZELIA *et al.*,                                           :

                                     Plaintiffs,                  :                          20 Civ. 8065 (JPC) (OTW)
                  -v-                              :
                                                                         :                            <u>OPINION AND ORDER</u>

CLINTON TOWERS HOUSING CO., INC. *et al.*,  :

                                 Defendants.                :

-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

       Plaintiffs are three residents of Clinton Towers, a federally subsidized apartment complex in Manhattan that Defendants manage. Plaintiffs allege disability discrimination in violation of the Fair Housing Act ("FHA") arising from Defendants' supposed improper denial of their requests to transfer to a larger apartment in Clinton Towers, which they claim was necessary to accommodate various health issues suffered by two of the Plaintiffs. Plaintiffs also allege, among other things, that Defendants purposely caused Plaintiffs to fail their annual certification, resulting in higher rent. Defendants move to dismiss the Amended Complaint solely on statute of limitations grounds, contending that Plaintiffs do not allege a claim that accrued within two years of their commencement of this action. Because there are factual disputes as to the timeliness of Plaintiffs' claim under the FHA, Defendants' motion to dismiss is denied.

                                  **I.**        **Background**

**A. Factual Allegations**

       The following facts are taken from the Amended Complaint, Dkt. 44 ("Am. Compl."), and are accepted as true for the purposes of this Opinion and Order. *See Doe v. Columbia Univ.*, 831

F.3d 46, 48 (2d Cir. 2016) ("On a motion under Rule 12(b)(6) to dismiss a complaint for failure to state a claim, the only facts to be considered are those alleged in the complaint, and the court must accept them, drawing all reasonable inferences in the plaintiff's favor, in deciding whether the complaint alleges sufficient facts to survive."). Plaintiffs Jack Bizelia, Anahit Matevosyan, and Hripsime Harutyunyan are co-tenants of a one-bedroom apartment unit at the Clinton Towers apartment complex located at 790 11th Avenue in Manhattan. Am. Compl. ¶¶ 1, 4. Defendants Clinton Towers Housing Inc. and P&L Management and Consulting, Inc. ("P&L") oversee the management of Clinton Towers. *Id.* ¶ 2.

Bizelia, who is 61 years old, has been diagnosed with mood disorder, obsessive-compulsive disorder, and generalized anxiety disorder. *Id.* ¶ 7. Bizelia's conditions cause him to be depressed and severely anxious, and he experiences claustrophobia in crowded rooms, resulting in heart palpitations and breathing difficulties. *Id.* ¶¶ 8-9. While Bizelia has been prescribed medication to manage his psychiatric conditions, he remains inhibited from partaking in many common daily activities, such as "being in crowds, interacting and communicating with others, [and] completing tasks and chores like shopping, and cleaning." *Id.* ¶¶ 8, 10. Bizelia also has a slipped disc in his lower back, for which he has been prescribed a cane, and a chronic sinus condition. *Id.* ¶¶ 11-12.

Matevosyan, who is 75 years old, suffers from a second-degree atrioventricular block, for which she has a cardiac pacemaker, as well as high blood pressure, hypertension, and anxiety. *Id.* ¶ 24. Due to her cardiac condition, Matevosyan experiences shortness of breath when walking and has been prescribed a cane to assist with her mobility. *Id.* ¶ 26. She also takes medication to treat her conditions and has been hospitalized twice since moving to Clinton Towers, including after suffering a heart attack. *Id.* ¶¶ 24-25. Harutyunyan is Matevosyan's primary caretaker and the only employed member of the household. *Id.* ¶ 32.

2

### 1. Plaintiffs' Requests for Accommodations

The Amended Complaint alleges that, between 2016 and 2021, Plaintiffs have continually informed Defendants of Bizelia's and Matevosyan's disabilities and requested that Defendants provide reasonable accommodations, including granting Plaintiffs' requests to transfer to a larger apartment unit at Clinton Towers.  *Id.* ¶¶ 15, 23, 27, 31.  Specifically, on or around July 12, 2017, Bizelia delivered to Defendants a letter from his doctor informing Defendants that he "suffers from chronic allergi[c] sinusitis with near complete blockages," and "he should have an apartment free of serious allergens."  *Id.* ¶ 16.  On or about July 21, 2017, Bizelia delivered a letter to the on-site manager at Clinton Towers, Tonia Blaine, requesting that Plaintiffs be transferred to a two-bedroom apartment "as soon as possible" because Bizelia suffers from "breathing disorders, a smoking vapor enters the apartment, and the small one-bedroom apartment is of insufficient size for three adult co-tenants, including one senior citizen with a heart condition."  *Id.* ¶ 17.  Both of Bizelia's July 2017 letters were stamped as "received" by Defendants on July 26, 2017, but Plaintiffs did not receive a reply to either letter.  *Id.* ¶¶ 16, 18.

On or about June 24, 2019, Bizelia sent Defendants a letter from his doctor, "noting that his current living situation contributes to his depression, high stress levels, anxiety, inability to sleep, and high blood pressure."  *Id.* ¶ 19.  Most recently, on or about April 15, 2021, Bizelia again informed Defendants about his medical condition by forwarding a letter from The Interborough Development & Consultation Center,[1] which noted that Bizelia suffers from severe mental illness and palpitations "when the room is crowded, feels that walls are coming close towards him, [and is] claustrophobic which le[ads] him unable to function his daily activities."  *Id.* ¶ 20.  The April

---

[1] Although the Amended Complaint refers to "The Interborough Development & Consulting Center," *see* Am. Compl. ¶ 20, the correct name appears to be "The Interborough Development & Consultation Center."

15 letter also stated that Bizelia "is unable to function while he lives in [a] crowded apartment," and that "[h]e needs a separate room and bigger apartment." *Id.* ¶ 21. The April 15 letter further requested that Defendants provide a two-bedroom apartment for Bizelia, maintaining that he "cannot survive in [a] congested living situation" due to his mental illness. *Id.* Likewise, on May 6, 2021, Defendants received a letter from Housing Conservation Coordinators, informing them that the "failure to transfer Mr. Bizelia to a bigger unit endangers him because of his documented medical condition" and would violate the FHA, the New York State Human Rights Law, the New York City Human Rights Law, and the New York City Administrative Code. *Id.* ¶ 22.

Matevosyan and Harutyunyan also sought accommodations from Defendants in the form of a transfer to a larger apartment. For example, on or around October 21, 2019, Plaintiffs delivered to Defendants a letter from Matevosyan's doctor about her medical conditions and recommending transfer to a new apartment. *Id.* ¶ 30.[2] And on or about April 2, 2020, Harutyunyan delivered a letter to Clinton Towers requesting a transfer to a two- or three-bedroom apartment on account of her co-tenants' disabilities. *Id.* ¶ 36.

On April 16, 2018, the New York City Department of Housing Preservation and Development ("HPD") notified Plaintiffs that "they have the appropriate household composition to occupy a two-bedroom apartment, and that Plaintiffs can notify Clinton Towers to be put on the internal waiting list." *Id.* ¶ 38. Blaine was copied on the letter from the HPD. *Id.* ¶ 39. In accordance with the HPD's eligibility notification, on or around April 19, 2018, Plaintiffs submitted another request for an apartment transfer to Blaine, enclosing a copy of an earlier letter

---

[2] On or around March 20, 2018, one of Matevosyan's doctors wrote that, due to her medical conditions, Matevosyan "must avoid smoke, dust [and] air pollutants" and recommended that "she . . . be house[d] in a smoke-free apartment." Am. Compl. ¶ 28. Plaintiffs, however, do not allege whether the March 20, 2018 letter from Matevosyan's doctor was delivered to Defendants.

to Defendants containing updated medical notes and documentation. *Id.* ¶ 40. Sometime thereafter, Blaine notified Harutyunyan that Plaintiffs were first on the waiting list and provided Plaintiffs with the necessary forms to complete for the apartment transfer. *Id.* ¶¶ 41-42. Around the time Plaintiffs submitted the completed forms, Blaine informed Harutyunyan that Plaintiffs would be eligible for a three-bedroom apartment since Bizelia and Harutyunyan are not spouses. *Id.* ¶¶ 43-44. Blaine then proceeded to show Harutyunyan a three-bedroom and two-bathroom unit on the tenth floor, and Harutyunyan informed Blaine that Plaintiffs would like to transfer to that unit. *Id.* ¶¶ 45-46. According to Plaintiffs, Defendants did not provide any additional information to finalize the apartment transfer and, instead, when Harutyunyan asked about the apartment transfer on a later date, Blaine told her: "[Y]ou did this to yourself. You're going to suffer." *Id.* ¶¶ 47-48.

Plaintiffs allege, upon information and belief, that Defendants unnecessarily delayed Plaintiffs' "years-long efforts to secure an apartment transfer" by allowing their notarized transfer documents to expire, forcing Plaintiffs to restart the process. *Id.* ¶ 49. When Plaintiffs notified P&L's President, Michael Piantadosi, about the issues, instead of accommodating Plaintiffs' transfer requests, Defendants commenced eviction proceedings against them. *Id.* ¶¶ 50-51. On or around April 2, 2020, Harutyunyan delivered another letter to Defendants requesting a transfer to a two- or three-bedroom apartment, but Plaintiffs have not received any response. *Id.* ¶ 36.

  2. **Defendants' Other Conduct**

In addition to Defendants' failure to accommodate Plaintiffs' requests to transfer to a larger apartment, the Amended Complaint alleges other conduct attributable to Defendants. Between November 2016 and 2019, Bizelia made multiple requests to Defendants that they make Harutyunyan head of the household. *Id.* ¶ 33. Defendants, however, rejected this request with no

explanation. *Id.* Moreover, during the annual recertification process in 2019, Blaine interfered with Plaintiffs' efforts to recertify their tenancy and, upon information and belief, caused Plaintiffs to fail their recertification process and to incur over $5,444 in rent owed to Defendants. *Id.* ¶¶ 55-56. Plaintiffs also allege that Defendants improperly assessed above-market rent for their one-bedroom apartment since 2013 or 2014. *Id.* ¶ 60.

### B. Procedural History

Plaintiffs commenced this action on September 29, 2020, Dkt. 2, and filed the Amended Complaint on October 26, 2021. The Amended Complaint alleges a violation of the FHA. Am. Compl. at p. 2. On December 22, 2021, Defendants filed a motion to dismiss the Amended Complaint in its entirety on the basis that Plaintiffs' claim is time-barred under the FHA's two-year limitations period. Dkt. 47, 48 ("Motion"). Plaintiffs filed their opposition to Defendants' Motion on January 24, 2022, Dkt. 49 ("Opposition"), and Defendants filed their reply on February 11, 2022 ("Reply").

## II. Legal Standard

### A. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In making this determination, the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d

6

541, 544 (2d Cir. 2015), but it need not "accept as true legal conclusions couched as factual allegations," *Lafaro v. N.Y. Cardiothoracic Grp. PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

Although the Court ordinarily must construe *pro se* submissions "liberally" and interpret them "to raise the strongest arguments that they suggest," *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (per curiam) (internal quotation marks omitted), where, as here, Plaintiffs received legal assistance from the New York Legal Assistance Group in drafting the Amended Complaint and their Opposition, *see* Am. Compl. at 10 n.1; Opposition at 1 n.1, Plaintiffs are "not entitled to the same degree of liberal construction afforded an unassisted *pro se* plaintiff." *Silver v. Lavandeira*, No. 08 Civ. 6522 (JSR) (DF), 2009 WL 513031, at *2 n.2 (S.D.N.Y. Feb. 26, 2009); *Littlejohn v. Consol. Edison Co. of N.Y., Inc.*, No. 18 Civ. 6336 (KPF), 2019 WL 3219454, at *1 n.1 (S.D.N.Y. July 17, 2019). Nevertheless, because only "[p]ortions of [the Amended Complaint] were prepared with assistance from the New York Legal Assistance Group's Legal Clinic for Pro Se Litigants in the SDNY," Am. Compl. at 10 n.1, the Court will afford some degree of solicitude in interpreting Plaintiffs' allegations in the Amended Complaint, *see Silver*, 2009 WL 513031, at *2 n.2.

**B. Statute of Limitations**

"The lapse of a limitations period is an affirmative defense that a defendant must plead and prove" under Federal Rule of Civil Procedure 8(c)(1). *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015). However, because the Court must accept all of the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor on a motion to

7

dismiss, *Biro*, 807 F.3d at 544, dismissal on statute of limitations grounds at the motion to dismiss stage is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Clement v. United Homes, LLC*, 914 F. Supp. 2d 362, 369 (E.D.N.Y. 2012) (quoting *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989)). In other words, "the Court can only grant a motion to dismiss based on statute of limitations grounds if there is no factual question as to whether the alleged violations occurred within the statutory period." *Id.*

### III. Discussion

Defendants move to dismiss the Amended Complaint solely on the grounds that Plaintiffs' respective claims are time-barred under the FHA's two-year statute of limitations. *See* Motion at 2. The FHA provides, in relevant part, that "[a]n aggrieved person may commence a civil action in an appropriate United States district court . . . not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . , whichever occurs last, to obtain appropriate relief." 42 U.S.C. § 3613(a)(1)(A). Since Plaintiffs commenced this action on September 29, 2020, their claim under the FHA would had to have accrued within the two-year period preceding this action or, specifically, on or after September 29, 2018, to be timely.[3] The

---

[3] Defendants argue in their Motion that Plaintiffs' claims under the FHA "had to have accrued, at the latest, after September 29, 2018"—two years before Plaintiffs filed the Complaint—"for them to have been timely commenced." Motion at 2-3. Yet Defendants also contend in a footnote in that Motion that "Plaintiffs' respective claims had to have accrued after October 26, 2019, two years before the filing of the Amended Complaint." *Id.* at 2 n.6. Because the allegations in the Amended Complaint arise out of the same conduct, transaction, or occurrence alleged in the Complaint, the Amended Complaint relates back to the date of the Complaint. *See* Fed. R. Civ. P. 15(c)(1)(B) ("An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]"). Therefore, September 29, 2018 (*i.e.*, two years from the filing of the Complaint) is the operative date for determining the timeliness of Plaintiffs' claim.

8

parties, as a threshold matter, disagree as to when Plaintiffs' claim accrued. Defendants contend that because "Plaintiffs allege that their transfer requests have been repeatedly denied since at least as early as 2016," their claims accrued as early as sometime in 2016. Motion at 1-3, 6. Plaintiffs respond that their claim is timely because "[t]here is nothing in the operative complaint that indicates Defendants denied or refused Plaintiffs' request for accommodation before September 2018." Opposition at 4.

"Claims under the FHA . . . are subject to the discovery rule and thus accrue when a 'plaintiff knows or has reason to know of the injury that serves as the basis for the action.'" *Clement*, 914 F. Supp. 2d at 371-72; *Stone v. 23rd Chelsea Assocs.*, No. 18 Civ. 3869 (VSB), 2020 WL 1503671, at *6 (S.D.N.Y. Mar. 30, 2020) ("In analyzing the timing of when a claim accrues in the context of discrimination claims, the Supreme Court has instructed that the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful." (internal quotation marks and alterations omitted)). In the context of a claim for reasonable accommodation under the FHA, a violation occurs—and, thus, a claim accrues—when a defendant denies a plaintiff's request for accommodation. *Logan v. Matveevskii*, 57 F. Supp. 3d 234, 266 (S.D.N.Y. 2014). Courts generally have recognized that "a refusal of a request for a reasonable accommodation can be . . . actual or constructive." *United States v. 111 E. 88th Partners*, No. 16 Civ. 9446 (PGG), 2020 WL 1989396, at *16 (S.D.N.Y. Apr. 27, 2020).

"A constructive denial may occur where a 'request for accommodation is met with indeterminate delay instead of outright denial.'" *Thompson v. CRF-Cluster Model Program, LLC*, No. 19 Civ. 1360 (KPF), 2020 WL 4735300, at *13 (S.D.N.Y. Aug. 14, 2020) (quoting *Austin v. Town of Farmington*, 826 F.3d 622, 629 (2d Cir. 2016)). The "determination of when a request for a reasonable accommodation is constructively denied by unreasonable delay is highly fact-

specific, and is made on a case-by-case basis[.]" *Logan*, 57 F. Supp. 3d at 267. In making such determination, courts have considered "whether the delay was caused by the defendant's unreasonableness, unwillingness to grant the requested accommodation, or bad faith, as opposed to mere bureaucratic incompetence or other comparatively benign reasons." *Thompson*, 2020 WL 4735300, at *13 (internal quotation marks omitted). Although "[m]onths-long delays in responding to requests for reasonable accommodation have been found to constitute constructive denials," "a long period of delay is not by itself sufficient to establish constructive denial." *Id.* Rather, the delay must be motivated by discriminatory intent. *Id.*; *cf. Logan*, 57 F. Supp. 3d at 258 (observing that in the analogous context of an employee's claim that an employer has constructively denied the employee's request for a reasonable accommodation under the ADA, "courts in the Second Circuit have consistently held that a plaintiff is required to provide evidence that the delay was motivated by the employer's discriminatory intent, as opposed to mere negligence"). Courts also have found constructive denial where the defendant "demand[s] that [the plaintiff] provide excessive or unnecessary information" or "pursue[s] eviction proceedings or take[s] other adverse action against [the plaintiff] after reasonable accommodation requests are made." *111 E. 88th Partners*, 2020 WL 1989396, at *16.

The Amended Complaint alleges that Plaintiffs continually informed Defendants of Bizelia's and Matevosyan's disabilities and made requests for accommodations between 2016 and 2021. Am. Compl. ¶¶ 15, 31, 54. But there is no allegation in the Amended Complaint that suggests that Defendants actually or constructively denied Plaintiffs' requests for accommodation prior to September 29, 2018. For example, Plaintiffs allege that Bizelia delivered letters to Defendants on July 12, 2017 and on July 21, 2017, requesting a transfer to a larger apartment. *Id.* ¶¶ 16-17. Plaintiffs, however, never received a response from Defendants regarding their request.

10

*Id.* ¶¶ 16-18. While Defendants are correct that a constructive denial may occur where a "request for accommodation is met with indeterminate delay instead of outright denial," Reply at 3 (quoting *Austin*, 826 F.3d at 629), there is no allegation in the Amended Complaint that Defendants' refusal to respond to Bizelia's July 2017 requests were motivated by bad faith or discriminatory intent. In the absence of such intent, a long period of delay, standing alone, is not sufficient to establish a constructive denial. *Thompson*, 2020 WL 4735300, at *13.

In contrast, the Amended Complaint alleges that, on April 19, 2018, Plaintiffs submitted another request for transfer to a larger apartment. Am. Compl. ¶ 40. Plaintiffs submitted this request after they received a letter from the HPD informing them that "they have the appropriate household composition to occupy a two-bedroom apartment, and that Plaintiffs can notify Clinton Towers to be put on the internal waiting list." *Id.* ¶ 38. In response to Plaintiffs' April 2018 request, Blaine, the on-site manager for Clinton Towers, notified Harutyunyan that Plaintiffs are "first on the waiting list" and provided Harutyunyan with the necessary paperwork for the transfer. *Id.* ¶¶ 41-42. It was also around this time that Blaine informed Harutyunyan that Plaintiffs would be eligible for a three-bedroom apartment, and even showed Harutyunyan a potential three-bedroom unit in the building, with Harutyunyan confirming Plaintiffs' desire to transfer to that unit. *Id.* ¶¶ 43-46. This alleged series of events suggests that Plaintiffs' apartment transfer request was being considered and processed, and that the request had not been constructively denied.

However, when Harutyunyan later followed up with Blaine regarding the transfer, Blaine told her: "[Y]ou did this to yourself. You're going to suffer."[4] *Id.* ¶ 48. Thereafter, Defendants

---

[4] The Amended Complaint does not allege when Blaine made this comment to Harutyunyan, but Plaintiffs in their Opposition contend that it occurred sometime in or after September 2018. Opposition at 3. Plaintiffs also request that "the Court read any new additional facts asserted in [the Opposition] as supplementing the operative complaint, as the Court may do

commenced eviction proceedings against Plaintiffs. *Id.* ¶ 51. Unlike Plaintiffs' prior requests to Defendants for which Plaintiffs did not receive a response, here, Blaine's comment to Harutyunyan in response to Harutyunyan's request for an update on the status of the apartment transfer ("[Y]ou did this to yourself. You're going to suffer.") can plausibly be construed as an expression of discriminatory intent, which supports a finding of a constructive denial of the transfer request. Likewise, Defendants' subsequent commencement of eviction proceedings against Plaintiffs also supports a finding of a constructive denial. But the question, for purposes of the statute of limitations inquiry, is when these actions took place. While Plaintiffs do not allege when these events occurred, drawing all reasonable inferences in Plaintiffs' favor as the Court must at this stage, there are factual questions as to whether Plaintiffs' claims accrued within the limitations period. Said differently, the Court cannot conclude at this stage that Plaintiffs can prove no set of facts that Defendants actually or constructively denied Plaintiffs' requests for accommodations prior to September 29, 2018.

To be clear, the Court's decision today should not be construed as suggesting that Defendants will be unable to establish that Plaintiffs' claims are time-barred under the FHA. Rather, dismissal of Plaintiffs' claims at this stage of the litigation is not appropriate because there are material factual issues to be resolved. *See Swan v. EMI Music Pub. Inc.*, No. 99 Civ. 9693 (SHS), 2000 WL 1528261, at *5 (S.D.N.Y. Oct. 16, 2000) (denying the defendants' motion to

---

with pro se litigants." *Id.* at 2. Although a court may ordinarily consider allegations asserted in a *pro se* opposition to a motion to dismiss so long as they are consistent with the facts alleged in the complaint, *see, e.g.*, *Lugo-Young v. Courier Network, Inc.*, No. 10 Civ. 3196 (RRM), 2012 WL 847381, at *1 n.2 (E.D.N.Y. Mar. 13, 2012), Plaintiffs are not entitled to the full degree of solicitude afforded *pro se* litigants given that portions of the Amended Complaint and the entire Opposition were prepared with assistance from legal counsel. *See* Am. Compl. at 10 n.1; Opposition at 1 n.1. The Court, however, need not resolve whether it should consider new facts asserted in the Opposition because the Court denies Defendants' Motion without needing to resort to those new factual allegations.

dismiss on statute of limitations grounds because "the date plaintiff's claims accrued is, at this stage of the litigation, a disputed issue of fact").[5]

### IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is denied. The Clerk of Court is respectfully directed to mail a copy of the Opinion and Order to Plaintiffs and note service on the docket. The Clerk of Court is also directed to terminate the motion pending at Docket Number 48.

SO ORDERED.

Dated: May 25, 2022
New York, New York

_____
JOHN P. CRONAN
United States District Judge

---

[5] Defendants argue for the first time in their Reply that, "even if the Court rejects [Defendants'] statute of limitations argument," the Court should dismiss the Amended Complaint for failure to state a claim. Reply at 5. As to Plaintiffs' request to be transferred to a three-bedroom apartment, Defendants contend that the "HPD determined that Plaintiffs did not meet the household composition requirement and, consequently, . . . [Defendants] could not lawfully accommodate Plaintiffs' request regarding a transfer into a three-bedroom apartment." Id. at 3-4. As to Plaintiffs' request to be transferred to a two-bedroom apartment, Defendants contend that "Plaintiffs have not alleged in their Amended Complaint that . . . they ever submitted the necessary application requesting that their names be put on a waiting list" or that "they are at the top of the list in terms of eligibility for a two-bedroom apartment," rendering their claim premature. Id. at 5-6. Because Defendants raise these arguments for the first time in their Reply, the Court declines to consider them in deciding Defendants' Motion. See Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."); Swain v. Brookdale Sr. Living, No. 08 Civ. 702S, 2011 WL 1213600, at *2 (W.D.N.Y. Mar. 31, 2011) ("Arguments raised in reply deprive the opposing party of the opportunity to challenge the movant's analysis and present authority on the issue.").

Further, because the Court finds that there are factual questions as to whether Plaintiffs' FHA claim is time-barred, the Court also does not reach whether the continuing violation doctrine applies to that claim.