**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
JACK BIZELIA, et al.,

                              Plaintiffs,                        20-CV-8065 (JPC) (OTW)

          -against-                                  **ORDER**

CLINTON TOWERS MANAGEMENT, et al.,

                              Defendants.
-------------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

       The Court construes Plaintiffs' filings at ECF 158 and 160 as motions for reconsideration, of ECF 157 and 159, respectively. Reconsideration is **GRANTED** and ECF 157 and 159, previously appointing counsel for Defendants, are hereby **WITHDRAWN**. Plaintiffs are correct that under 28 U.S.C. § 1915, counsel may only be appointed for a natural person,[1] and Plaintiffs have not sued a natural person in this case.

       The history of this case bears examination, however, because it raises concerns about the limitations of 28 U.S.C. § 1915, representation for non-profit organizations and other entities that may have meritorious defenses but lack the resources or ability to raise them, and the ethical obligations of all attorneys admitted to practice. These concerns were raised by the Honorable Jack Weinstein, in 1976.[2] In the context of a bankruptcy debtor proceeding with its sole (nonlawyer) shareholder, Judge Weinstein closed his opinion with this question:[3]

> Suppose a corporation were too impoverished to employ a lawyer to defend it, or suppose it had a large claim it believed to be just but could find no lawyer

---

[1] *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194 (1993).
[2] *In the matter of Holliday's Tax Services, Inc.*, 417 F. Supp. 182 (E.D.N.Y. 1976).
[3] *Id*. at 185.

>who would take the case, believing it to be hopeless, should the corporation be denied its day in Court?

In the years since *Rowland* was decided, judges have noted (with some dismay) that we are largely bound by *Rowland* and likely cannot apply any exceptions to the rule that an entity must appear by an attorney. In some instances, the harm to the corporation may be ameliorated if an individual appears on the same side of the "v" and has interests that are "synonymous with and inseparable from"[4] the entity defendant. More recently, Judge Pauley also noted the "intuitive appeal" in the context of a consent decree with the SEC, while also questioning whether narrow and fact-specific exceptions might still survive *Rowland*:

>Certainly, the Commission's position has some intuitive appeal: Terminus has not appeared in this action, Terminus seems to be impecunious, and any *pro bono* corporate appearance would be for a limited purpose resolving the Commission's claims against Terminus. Even more poignantly, Terminus' failure to appear through counsel would simply (in all likelihood) subject it to a default judgment virtually identical to the consent judgment currently sought by the parties. Moreover, authority from this circuit suggests that some exceptions— albeit narrow and arguably limited to specific factual scenarios—apply to the general rule that corporations may not appear *pro se*.[5]

Plaintiffs filed their initial complaint *pro se*, and an Amended Complaint with the assistance of NYLAG. (ECF Nos. 2 and 44). Defendants, represented by Rivkin Radler, LLP, moved to dismiss on timeliness grounds only, but raised in their reply an argument that Defendants could not lawfully accommodate the Plaintiffs' requests because, *inter alia*, Plaintiffs did not meet the requirements for a transfer to a three-bedroom apartment, nor had they requested a transfer to a two-bedroom apartment.[6]

---

[4] *Sanchez v. Marder*, No. 92-CV-6878 (PKL) (NRB), 1995 WL 702377, at *2 (S.D.N.Y. Nov. 28, 1995).
[5] *SEC v. Terminus Energy*, No. 17-CV-1117 (WHP), 2019 WL 1570599, at * 2 (S.D.N.Y. Apr. 11, 2019) (cleaned up; internal citations omitted).
[6] ECF 54, Opinion and Order denying Motion to Dismiss, at n.5. Judge Cronan noted, *inter alia*, that these were fact-specific arguments that could not be raised on a motion to dismiss.

The Court found *pro bono* representation for Plaintiffs for purposes of mediation, which ultimately proved to be unsuccessful. (ECF Nos. 67, 70, 71, and 87). On May 18, 2023, an attorney from Quinn, Emanuel Urquhart & Sullivan ("Quinn") entered a limited *pro bono* appearance for Plaintiffs. (ECF 90). Since that date, a total of five associate attorneys from Quinn have appeared in court proceedings.[7]

On July 21, 2023, Quinn and Rivkin Radler filed a 15-page joint letter on discovery, and over 100 pages of exhibits, identifying numerous discovery disputes, which the Court discussed, at length, at a conference on July 25, 2023. (*See* ECF Nos. 107, 108, and 112 (transcript)). At this conference, Quinn first raised the specter of a spoliation motion, and complained of delayed responses regarding document search and retention.[8] Defense counsel explained that Defendant P&L Management was operated by its "prior manager who is now deceased, Michael Piantadosi,"[9] and that the on-site employees who would have handled any communications with Plaintiffs were former employees who often used their personal emails, but that they were nonetheless engaging in a voluntary search with the former employees as well as accessing Mr. Piantadosi's emails. At least one former employee was willing to sign an affidavit stating, in essence, "I had no communications with these parties; I did not do any work with respect to their recertifications or transfer requests."[10] Counsel again pointed out that the lack of documents might be entirely consistent with Defendants' repeated assertions that

---

[7] Mark-Andre Cyr and Jack Robbins timely filed Notices of Appearance, and have appeared at conferences and filed letters, but their names do not appear at the top of the docket, while Temololuwa Omilabu and Michael Wittman filed Notices of Appearance, and their names do appear associated with their clients. Misha Boutilier, who first appeared for Plaintiffs, timely filed notice of withdrawal after he left Quinn, and his withdrawal is also easily visible on the docket.
[8] *See, e.g.*, ECF 112 at 11-15.
[9] *Id*. at 5.
[10] *Id*.

Plaintiffs did not complete an application for a transfer and that they may not have been eligible for the transfer (and injunctive relief) that they sought,[11] to which Quinn asserted, "Ms. Hardy's submission goes straight into the merits of this case. We don't think these are properly before you, and we disagree."[12] Following that comment, much time was spent in discussing ways to prioritize discovery and move toward depositions.

On September 21, 2023, I held another status conference during which I tried to avert defense counsel's withdrawal and Defendants' potential default. After speaking to outgoing counsel and Ms. Piantadosi, Defendants' proposed in-house or *pro bono* attorney, I gave Rivkin Radler a schedule to file their motion to withdraw, spoke to the parties about timing,[13] and convened an off-the-record settlement conference since all the parties had counsel and Defendants had a client representative (Ms. Piantadosi) present. (ECF 131). On October 18, 2023, I granted Rivkin Radler's motion to withdraw, and stayed all proceedings for 30 days.

On Tuesday morning, November 21, 2023, Quinn filed an application for a clerk's certificate of default; later that day Ms. Piantadosi filed a notice of appearance as *pro bono* counsel, and I attempted to vacate[14] the Clerk's Certificate of Default. At ECF 156, Ms. Piantadosi laid out her reasons for being unable to adequately represent Defendants in the face

---

[11] *Id*. at 18-19 ("There's a long protracted case, and quite frankly, the plaintiffs have gone from forum to forum alleging the same claims. They've been in housing court before HPD, and HPD said to them, put in an application or a transfer. They went to the New York State Division of Human Rights. The New York State Division of Human Rights said, put in an application for a transfer."); *see also* ECF 108 at 6.
[12] *Id*. at 19.
[13] *See* ECF 131 at 5 (Quinn anticipated not "tak[ing] a position on the motion to withdraw," but then also stated "we would like to move forward with discovery in the case and we don't think the motion to withdraw should be a reason to delay that."). After explaining to Quinn that discovery could not proceed unless Defendants were represented by counsel, I told Quinn that "the case will end up being effectively stayed for at least the next six weeks" in order to address the issue of defense counsel and next steps. *Id*. at 6.
[14] Due to a typographical error, the order cited the incorrect ECF number for the Clerk's Certificate of Default.

of Quinn's "significant resources," which ultimately led to my orders appointing counsel at ECF 157 and 159.

Quinn continues to assert that appointment of *pro bono* counsel is neither available nor necessary since Defendants "are both corporations and already have representation." (ECF 160). It is an open question, however, whether this case may be unique enough to present a very narrow exception to the rule articulated in *Rowland* and outside of 28 U.S.C. § 1915's definition of "person." For example:

- One defendant is a non-profit organization that serves the community by providing affordable housing; the other entity defendant is its manager or managing agent;
- The injunctive relief sought by Plaintiffs may not be legally available;
- Defendants do not have the financial ability to pay for counsel;
- The only witnesses with personal knowledge are former employees (who are unwilling and under no obligation to cooperate) and P&L's former manager, Michael Piantadosi (who is deceased and thus unable to cooperate); and
- Current *pro bono* counsel, Michelle Piantadosi, is an employee of Defendant P&L who is not a practicing litigator and who may be a witness herself[15] and/or related to Mr. Piantadosi.[16]

Additionally, neither *Rowland* nor 28 U.S.C. § 1915 preclude any counsel from <u>volunteering</u> to represent Defendants, but the Court is concerned that Quinn's zealous advocacy, as reflected on the docket, may discourage prospective counsel to the point of forcing Defendants to default.

Two key factual disputes keep arising: first, were Plaintiffs eligible for a larger apartment, whether that was a 2-bedroom or 3-bedroom apartment? Second, if they were, did

---

[15] ECF 162, Transcript of February 8, 2024 conference.
[16] Magistrate judges in this district regularly manage 200 or more cases at any one time. Only in drafting this Order and reviewing prior filings did the Court notice that current *pro bono* counsel shares the same last name as P&L's former, deceased manager. The Court regrets this oversight.

they submit the requisite application and were they ever placed on the waiting list? Plaintiffs say yes, Defendants say no.[17] There is an absence of documents to support Plaintiffs' answers to these questions, and the absence of documents tends to support Defendants' contentions. Moreover, Defendants have repeatedly asserted that they cannot lawfully provide the relief sought by Plaintiffs because affordable housing in this city is a zero-sum game and they cannot jump Plaintiffs to the top of waiting list that they are not currently on, over low-income New Yorkers who have submitted the requisite applications and have been waiting for an opening to move to a larger apartment.[18]

In light of the current *pro bono* representation which highlights clear disparities in resources, I question whether engaging in further discovery would be proportional under Rule 26(b)(1). Ultimately, a determination of liability will likely depend on credibility of witnesses (including, perhaps, Ms. Piantadosi). If that is the case, proceeding to summary judgment on whether Plaintiffs can prove the elements of their claims or even proceeding directly to trial may be a more efficient process for all involved.

**The status conference scheduled for tomorrow, Tuesday, March 19, 2024 at 11:30 a.m. will proceed as scheduled**. Counsel should be prepared to discuss the practical and procedural issues raised in this Order. At least one partner supervising the Quinn attorneys on this matter is directed to file a notice of appearance and attend the conference.

Discovery is stayed until further order of the Court. Failure to abide by this discovery stay **shall** result in sanctions.

---

[17] *See, e.g.*, ECF 54 at n.5; ECF 112 at 42-43.
[18] Mysteriously, even since Quinn entered the case, Plaintiffs have not made any effort to submit an application for a larger apartment, which they legally have a right to do and for which Defendants are clearly barred from disregarding (that would be retaliation).

The Clerk is respectfully directed to vacate ECF 143, the Clerk's Certificate of Default.

**SO ORDERED.**

Dated: March 18, 2024
New York, NY

*s/ Ona T. Wang*
**Ona T. Wang**
United States Magistrate Judge